Good morning, Your Honors. May I please support Karen Monreal on behalf of the petitioner, Mr. Guadalupe Flores-Rodriguez. I would like to reserve my four minutes for rebuttal. Okay. Your Honors, this petition should be granted. The petitioner is a 33-year-old, presumably national of Mexico, and I say presumably because that is really the contested issue in this case. Petitioner grew up in Elko, Nevada, with his earliest memory being in Elko, Nevada when he was attending kindergarten there. He was told by his parents, he was told by his family, his aunts, his uncles, and by the midwife that delivered him that he was actually born in Elko, Nevada. To this, he was given a Nevada birth registration and a valid Social Security card, which he later used to be able to obtain a Nevada driver's license. And in fact, using his Nevada driver's license and or his Nevada birth registration, he was able to travel to and from Mexico, entering the United States, using either of those items without incidents. The petitioner believed, and this was part of his identity, he believed that he was actually a U.S. citizen. In 2010, he was arrested by ICE officials, and at that point, again, he told the ICE officers that he was a U.S. citizen. The ICE officers went and searched his parents' house, and at his parents' house, there was, they found two fake green cards and a Mexican birth certificate. And it's very important to note that these items were found at his parents' residence, and they were not in possession of the petitioner, like the agency misstated. So there's really three issues in this case. The first one being whether the agency used the incorrect legal standard when analyzing whether the petitioner had falsely represented himself to be a U.S. citizen. And second, whether the adverse credibility finding found by the, first by the IJ and adopted by the agency, was in fact supported by substantial evidence. And the third being whether the petitioner was denied his due process and was not given a fair trial. And I will first address the improper legal standard that was used by the agency. The agency noted that it was not reasonable for the petitioner to believe in June of 2010 that he was a U.S. citizen. However, this is the incorrect legal standard. The Department of Homeland Security has adopted the subjective belief. Whether the petitioner believed that he was a U.S. citizen and whether the claim was knowingly that he knew that he wasn't a U.S. citizen and that he made this claim in order to obtain a benefit, knowing that this claim was false. And the agency simply disregarded this argument. They relied and said that the belief that the petitioner would be a U.S. citizen was not reasonable given the evidence in the case. But they did not analyze it under the correct legal standard whether the petitioner did in fact made this claim knowingly that it was false. And so what is the best case you have on the point that you're urging? Yes, Your Honor. That the standard is a subjective one rather than an objective one. Well, Your Honor, this was adopted by the USCIS adjudicator's field manual when they said again that the statement must be knowingly. Again, in matter of Kim Sung, this was a case by the agency again stated that the claim must be knowingly. And this court has held in matter of Anguiano that the defendant must be found to have made his claim knowingly, knowing that it was false. So the agency in this case just did not address that issue. They simply stated that it was not reasonable that the petitioner would believe that he was a U.S. citizen at that time and therefore did not analyze the case. Counsel, what is the case, though, that says that to do something knowingly, you have to that's measured by a subjective test? Yes, Your Honor. And there was a case also in matter of Gomez-Gilardo, and this was an agency case where, again, it was decided and it was held that it had to be knowingly. And this brings me to the if Congress would have intended to take away the knowingly and willful elements, this would not pass a rational basis test. And that is because there would be no rational basis for including an individual who wholly innocently made a misstatement. So therefore, in order to be constitutional and to pass a rational basis test, there must be the knowingly and willful requirements. Counsel, I have a question on that, too, because I know that we've held to be criminally convicted. We held this in Anguiano-Morphin to be criminally convicted for falsely representing yourself to be a citizen of the United States. The government must prove that the defendant know that his representation is false. We've held that. And for that reason, I assume the reason DHS decided not to charge your client in this case with that crime was because of the mens re element that they would have to prove. But is there a lesser standard when it's just simply a charge like in an NTA that that maybe the agency applies or is the agency also held to this knowing standard? Well, your honor, there is a history of jurisprudence where the agency has held in various cases that they in order to find a person inadmissible for a false claim of citizenship, that they would have to find that person to make the statement knowingly and willfully. So the petitioner would have had to make that statement knowing that he was not a U.S. citizen and with the intent to deceive or to obtain a benefit. And in this case, it's language and I guess there must be a immigration case. I don't know if you have it at hand. It contains that language, but I don't want to bog down your argument in that point. Your honor, so it was a matter of pension. And that was an agency case where it is well established that the alien who knowingly made a false claim to United States citizenship for the purpose of evading inspection on the immigration law in entry without inspection. And it goes to say that the person would be inadmissible for being found to have made that statement knowing that it was false. And the agency then went on to say that, well, because it was not reasonable given the evidence, then we're not going to address it. And that goes to the adverse credibility finding. The agency held that the petitioner was not credible and any statement that he was a U.S. citizen would not be found credible, therefore, giving rise to the adverse credibility finding. And they stated that it was because of the evidence that was found. But the agency failed to take into account that, for example, they stated the Mexican birth certificate. They failed to take into account the petitioner's explanation as to why there was a Mexican birth certificate. The petitioner explained that he was given this Mexican birth certificate and he was told by his mother that he had dual citizenship and that he would use this Mexican birth certificate in order to avoid paying the foreigner's fee when he traveled to Mexico. And again, this birth certificate was not found in his possession by the agency status. So the agency misstated the evidence in the case and stated that the Mexican birth certificate was found in the possession of the petitioner when it was not. It was found at his parents' house. And with the two green, fake green cards, again, the petitioner explained that the green cards were used when he was 14 to be able to gain lawful employment. When he was 16 and as soon as he was of age to start working, he stopped using those green cards. And those green cards were, again, found in the petitioner's parents' home, not in his possession, again, by the agency mischaracterized. So the petitioner's belief that he was a U.S. citizen did not be reasonable to be credible. However, they need to be genuine and they need to be supported by his own explanations. And the agency disregarded his explanations as to why there was the Mexican birth certificate and the green cards. This was a belief that the petitioner had since he was a child. And also, that brings me to the due process violation. He was not going to notice that the false claim to citizenship was going to be an issue at his individual hearing. In the beginning, he was told by an IJ that if he botched those documents, which was the Nevada birth registration and the different statements that he would be charged with the ground of inadmissibility for claiming to be a United States citizen. So at that point, under that threat, he withdrew those documents. So he had no opportunity to defend himself. Had he known that he was going to be charged with this ground of inadmissibility, he could have submitted statements from his parents. He could have submitted statements from the midwife. But he was not given this opportunity. This came about right at the individual hearing, and he was not given the opportunity to present evidence to rebut this or to defend himself. And for those reasons, his due process rights were violated. I mean, I would like to counsel if we were to agree with you on that point and say that he should get relief of a grant on the due process issue. What happens after that in the agency? Well, at that point, I believe that they would have to do another hearing in order to determine whether he can successfully defend the ground of inadmissibility for claiming to be a United States citizen. And that the agency at that point would have to take into account whether the statement was made knowingly and whether they can successfully carry their burden to carry what successfully the petitioner can successfully carry his burden to establish that it wasn't made willfully, knowingly, and willfully. Thank you, counsel. Thank you. I would like to reserve the rest of my time for rebuttal. All right. Thank you, counsel. May it please the court. Paul Fiorino for the attorney general. Can the court hear me? Yes, we can. Okay. Thank you. Your screen is frozen, but we can hear you. Okay. Well, as long as you can still hear me, then that's fine. Yes, that's what's important. I'm going to stop my video and start it again. Okay. That sometimes helps. Nuts. Okay. Well, I apologize, Your Honor. You know what else helps, and we'll give you time to do this. You can also go off Zoom and then return to Zoom, and that sometimes fixes the problem. Well, if the court would like me to do that, I'm happy to do that. I'm also happy just to appear as a blank screen and a voice. I would prefer if you just try to log on to Zoom again so we can have a conversation. I would prefer that, too. Yes, Your Honor. I'll do that. Give me a moment, please. Is Sam there? Sam, can you help us out here? Yes, Judge. I'm here. I'm ready to let Mr. Fiorino back in if he wants to just leave the meeting and then reconnect. All right. Thank you. Thank you. Thank you.  Well, we've got time. We've got about an hour. Okay. Thank you. Thank you. It's a lot of fun, but it's kind of, you know, Sam, I turned up on you, but it's a different meeting. Yeah. Thank you. We have you back. Can the court hear me? Yes. Okay. The court can see me? Or am I frozen again? You're frozen again, but I think that's okay. Leave it like this. At least we can see you. Okay. Sorry, Your Honor. Okay. Where was I? This case really boils down to something very simple. It's a factual issue. It's the issue of whether Mr. Rodriguez genuinely believed he was a U.S. citizen. And the immigration judge and the board found that he did not believe that, that he was not credible. And based on the evidence that they looked at, that there was no possible way he could have believed that. So this is basically an adverse credibility case. I don't really understand the distinction that the petitioner is trying to make between subjective and reasonable. First of all, I don't think that the agency adopted a reasonable standard. In fact, the agency followed the Second Circuit's reasoning in the Richmond case, which basically holds that the issue is simply a factual one. And it's whether or not, you know, whether or not he believed he was a U.S. citizen. And for the purpose of this court's review, the issue is, does the record evidence compel the conclusion that he did actually believe he was a U.S. citizen? So that's the first thing. The second thing I want to clear up and make very clear to the court is that his ground of inadmissibility was not falsely claiming to be a U.S. citizen. His ground of inadmissibility was being in the United States without admission or parole. The false claim to citizenship issue came up when he applied for adjustment of status. And that happened as soon as he was in removal proceedings. So the argument that he wasn't put on notice until his removal hearing is kind of a red herring because it only came up because he was applied for adjustment of status. And you see his false claim to citizenship precludes his adjustment of status. So that's why it wasn't brought up until then. He wasn't charged with inadmissibility based on a false claim to citizenship. His inadmissibility was being, he was not admitted or paroled in. So that brings us back to... Judge Edgwood, if I could ask you a question. If, however, he was not given notice that the false claim of citizenship could be dispositive on his adjustment of status, why would that not be a violation of fundamental fairness? He was given notice, Your Honor. During his removal hearing, the immigration judge first noticed it during the hearing. And he was put on notice that we have a false claim to citizenship. His counsel certainly could have asked the court for a continuance to bring in evidence. They could have asked the court for an affidavit from his mother who allegedly told him he was a U.S. citizen. They didn't. He could have asked for an affidavit from Ms. Espita. And in 23rd of February 2009, she attested that she was the midwife to his birth. And she gives her phone number and her address in that affidavit. And that affidavit is on page 475 of the record. They could have called her as a witness, but they didn't. So this claim of being blindsided in the due process violation really doesn't have any merit. So if I could, does that answer your honest question? Well, I don't know if it answers Judge Gold's, but it doesn't answer my same question. Because as I understand it, there were two prior preliminary hearings where the false claim to citizenship was not an issue. And by the time he reached his final hearing in 2014, that it had not been raised for two years. And it was not even briefed. And he was not prepared with witnesses. And then there was a new I.J. And the new I.J. made it the central issue of the 2014 hearing. But still, Your Honor, he was still on notice. He was on notice as of the earlier hearing. And his attorney certainly could have asked the court for continuance to bring in that evidence. And again, it was only brought up. It was not a ground of inadmissibility. It was a disqualification from the relief he was seeking. So he wasn't blindsided or surprised at all. So I think that argument works against you. Can you see me? Because you're stationary. I can see you. I think that argument works against your position. Because, yes, it wasn't the charge for which he was being deported. So it wasn't a charge in the case. And DHS had decided not to charge him with it. So he had reason to believe, or his counsel did, that it was not going to be an issue in the 2014 hearing when the new I.J. came in and made it the central issue. But certainly, Your Honor, I see that point. But it was not outside of his ability to ask the court for a continuance at that point to say, Your Honor, now that this is an issue, may I please have time to buttress my claim that I genuinely believed I was a U.S. citizen? That was certainly open to him. Counsel, that may have been open to him, but wouldn't it be a more fair procedure for us to vacate and remand it so that with that charge and with that claim in mind, he could prepare for the hearing and write a brief on the issue? Well, we don't think on this record, Your Honor, that he meets the standard of prejudice which is required for a due process hearing because the standard for prejudice would show that the outcome may have been different. And in this case, what we have, let me, if I could, describe the evidence, the substantial evidence in the record that supports the adverse credibility finding that's before the court today. He was first given a fake green card when he was 14 years old. Why would he need a green card if he genuinely thought he was a U.S. citizen? That's the first question. He was given another fake green card at some other point after that, I think he said when he was 16. He applied for a passport when he was 16 years old and that's on page 246 and 247 of the record. It was declined because, as he says, his paper wasn't up to par. Okay, there's no evidence in the record that he, after that, he tried to perfect his passport application. He just sort of gave up on it. So there's that. He first saw his U.S. birth certificate when he was 17 years old and he used that to get into Mexico, but he also used his driver's license, his U.S. driver's license to get back into the United States. Now, is it possible that he thought he had dual citizenship? Maybe, but it's also very possible that he knew he was not a U.S. citizen and the substantial evidence in this record supports the adverse credibility finding. There's no compelling evidence that he genuinely knew, in light of these facts, that he was a United States citizen. So the standard of review for the court on this issue is whether or not substantial evidence supports the adverse credibility finding. Secondly, with respect to the due process claim, the due process claim that was raised to the board does not in any way, as I read the case, resemble the one that's being raised now. As I understand it, the due process claim that was raised to the board in the appeal had to do with bias and the intemperance of the immigration judge. It was only before this court, as I read the briefs and as I read the record, that for the first time on appeal, the petitioner is raising this issue that we think lacks merit, but that he was not on notice of being required to defend his belief that he was a U.S. citizen. So that's an additional problem right there with the due process claim. We don't think it was adequately exhausted if you look at the record. So at the end of the day, as I started out my argument, Your Honor, this boils down to a simple question. Does substantial evidence in the record support the agency's finding that he did not believe he was a U.S. citizen? And for the reasons I've explained to you, all the sequence of events is using fake documents. We would say that substantial evidence does support the board's finding, and we would ask the court to affirm the board's decision and not deny the petition for review. And if the court has no further questions, again, I apologize for the video hookup. You're having to look at a frozen attorney. A deer in the headlights. But I apologize. It could be worse, Mr. Fiorino. At least I'm not a cat. You all right, Your Honor? Yes. Okay. I have a question for you. Yes, Your Honor. So, let me assume for a minute that the evidence that's actually in the record does not compel the conclusion that the petitioner is entitled to relief.  on the due process issue, let's just assume for a minute that if he had noticed that issue was going to be significant in his claim for adjustment that he would have called the midwife to testify. And if she testified and gave credible testimony that he was born in the U.S., wouldn't that have supported his claim? Well, he'd still have to get around having used the Mexican birth certificate, which at various points in the record he claims is genuine and claims it's fake. And let me, if I could point, Your Honor, to a point in the record where that is an issue. One second here. Okay. 255 of the record. He testified that his Mexican birth certificate is legitimate. That's on 255. And then he contradicted himself later on on page 237 of the record and says that it's fake. So we don't know what to believe here, Your Honor. And that's, again, the problem with the case. That's more substantial evidence you know, again, that doesn't answer your question. But let me, if I could answer one more question Your Honor had. Suppose his, the court does find, which we don't believe, that the evidence compels the conclusion that he genuinely believed he was a U.S. citizen. What then? Well, then his ground of inadmissibility for falsely claiming U.S. citizenship would go away and it would have to go back for a further adjudication of his adjustment of status. And he would have some hurdles there because he still, I think there's a moral character issue, and I'm not sure if it's relevant for adjustment of status or cancellation, but there's a moral character issue with respect to him having taken his parents across the border. At one point, yeah, he waived his cancellation of removal because he helped his parents enter the United States illegally. And that's on page 220 of the record. So, you know, that would be an additional hurdle for him. But simply, yes, if the court should find that there's no, that it's inescapably, it's inescapably true that he genuinely believed he was a U.S. citizen, he would have to have a full adjudication of his adjustment of status application. All right. Thank you very much, Counsel. Thank you again, Your Honor. You're welcome. Monreal Salazar. Thank you, Your Honor. And, Your Honor, that is what the petitioner is asking. He wants to have a full adjudication of his adjustment of status application without being blindsided and given this hurdle of now the claim of him falsely representing himself to be a U.S. citizen. And the first IJ determined that any allegation of a false claim would not be an issue unless the petitioner withdrew the documentation. So there was no notice. He went into that hearing under the assumption that there was going to be no issue in regards to the false claim because he did, as he was told, he withdrew those documents. Now, there's no substantial evidence to support an adverse credibility finding. The agency, first the IJ, then the agency did not fully analyze his explanation for the fake green cards and the Mexican passport. Further, misstated the evidence. They said that the Mexican birth certificate and the green card was in his possession, which was not. Those documents were in his parents' home. So the case does need to be remanded for the agency to consider the petitioner's explanations and to fully give weight to the evidence in the case where the evidence was not found in the petitioner's possession, but rather his parents. And also for him to fully brief the issue, for him to be able to bring in witnesses that would testify in his favor or to testify as to why he believed that he was a U.S. citizen. The petitioner was not given this opportunity. He was essentially blindsided and given that his case was denied because he made this false claim without giving him the opportunity to defend himself. For those reasons, we believe that this petition should be granted. All right. Thank you very much, counsel. Flores Rodriguez versus Wilkinson will be submitted. And this session of this court is adjourned for today.
judges: Wardlaw, Gould, Cain